PETER PAUL CLOSSMAN *v.* THEOPHILE BARBANCEY.

An action for the recovery of goods claimed by plaintiff as his property, which had been surrendered by an insolvent, against one who holds them as the syndic of the creditors of the insolvent, must be brought before the court in which the proceedings in insolvency are pending, and must be tried contradictorily with the creditors. Otherwise, were defendant sued in his private capacity for damages for unlawfully taking possession of the property of the plaintiff; such an action might be brought before any court of competent jurisdiction.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

MORPHY, J.  The petition states, in substance, that in September last, one Charles Huberson being at Bordeaux, in the kingdom of France, had on hand a quantity of wines and other merchandize which he intended for the New Orleans market ; that being in want of funds he obtained a loan from the plaintiff of $5557 66, for which sum he drew in his favor a bill of exchange on himself, at New Orleans, payable sixty days after sight ; and that to induce the plaintiff to make this advance, he endorsed in blank and transferred to him the bills of lading and invoices of the goods, which had already been put on board of the ship Etna, bound to New Orleans, and, moreover, executed, in duplicate, a writing by which he authorized plaintiff's agents at New Orleans to receive the goods, to sell a sufficient quantity of them to pay the draft even before it should fall due, and to pay over to him any balance in money, or deliver such part of the goods as might remain unsold.  That, by consent, this arrangement was extended to and made to cover a further sum of $1050, advanced to Huberson by the plaintiff ; that the goods were accordingly consigned to the house of J. & L. Garnier, the plaintiff's agents, who entered them in their own names at the Custom House, gave their own bonds for the payment of the duties, and took possession of the goods.

The petition represents that at the request of Huberson, who had arrived at New Orleans, and had accepted the draft, J. & L. Garnier consented, in order to save expense, that he should look out for a cheap store, and should himself attend to the keeping and selling of the goods, in the same manner as a clerk of their own would have done, on his promising to make no credit sales

without consulting them, to account daily to them for cash sales, and to be in every respect subject to their orders and directions. That Huberson's draft having been protested for non-payment at maturity, J. & L. Garnier informed him that, pursuant to his written agreement with the plaintiff, they would sell a sufficient portion of the goods to pay the balance due for the advances made on them by the plaintiff, and for the amount of their bonds for duties, to wit, $2249 39. That Huberson immediately applied to the Parish Court of this parish, made a surrender to his creditors of the goods in the store he had rented, and put the plaintiff on his schedule as an ordinary creditor for $6062 90.

The petition avers that at the time of and before this surrender, the plaintiff, through his agents, had a qualified property in the goods, and was in the virtual possession of the same ; and that Huberson abused the limited control which he had over the goods, for the purpose of defrauding the plaintiff ; that with the view of promptly thwarting the intended fraud, J. & L. Garnier, as the agents of the plaintiff, procured a sequestration of the goods, and brought suit against Huberson. That from the pleadings, which were drawn up with some hurry and under an imperfect knowledge of the facts of the case, it might be inferred that the petitioners had only a privilege on the goods, whereas, in reality, they had the ownership and exclusive right of possession thereof, which could not be destroyed by the pretended cession of them by Huberson, and that the petitioners have discontinued said suit.

The petitioner further represents that at a meeting of the creditors of the insolvent, Theophile Barbancey was appointed their syndic, and that in said capacity he has taken possession of the goods which had previously been sequestered ; that the possession of said Barbancey is illegal, and that he had no right to take the property as syndic, because the qualified ownership and exclusive right of possession thereof were in the petitioners, and could not be ceded by Huberson to his creditors.

The petition concludes with a prayer that Barbancey may be condemned to deliver the goods and merchandize to J. & L. Garnier, to be disposed of according to the agreement between the parties, on condition that, after paying out of the proceeds of the sale all the advances or charges on them, any balance of the price

of the goods, or any remaining portion of them in kind, shall be delivered over to the said syndic, &c.

To this petitition various exceptions were filed. Of these it is only necessary to consider that which was sustained by the inferior judge, to wit: that the Parish Court, in which Huberson failed, has alone jurisdiction of this suit, against the syndic.

*Benjamin*, for the appellant,

*Castera*, for the defendant. The action should have been brought before the court where the surrender was made. *Syndics of Menard* v. *Peirce*, 3 Mart. N. S. 375. It is only by an opposition to the tableau of distribution that the validity and relative ranks of claims against an insolvent estate, can be finally settled. *Davis* v. *Heard*, 1 Mart. 207. *Grainer* v. *Devlin*, 1 La. 172. *Pandelly* v. *His Creditors*, 9 Ib. 393, 396.

MORPHY, J. It is said that the opinion of the Commercial Court is based on a misconstruction of the petition, and that this action is not brought against the defendant, as syndic, but in his private and individual capacity. From the plaintiff's own showing, and from all the proceedings before us, it is difficult to view this demand in any other light than as one against the creditors of Charles Huberson, represented by the defendant as their syndic. The record shows that the goods now claimed were put by the insolvent on his schedule and surrendered to his creditors; and that the present plaintiffs had the goods sequestered on the ground that they had a lien on the same, and that they had reason to fear their rights would be injured by the manner in which the property was used by Huberson. The sequestration having been set aside, the sheriff's return shows that the goods were delivered into the possession of the defendant, who, in the mean time, had been appointed definitive syndic. The latter prayed for the sale of the goods, whereupon two creditors, Cornet, and A. Grandgey, *fils*, who claim as vendors a privilege on some of these very goods, prayed that the portion respectively subject to their claims might be sold separately from the other property surrendered, in order that they might exercise their privilege on its proceeds. Under these facts it is clear that the true and only parties concerned in the demand of the petitioners, are the creditors of Charles Huberson, particularly those who assert their right to a privilege on the goods claim-

ed as vendors. It is only with them that the petitioners can try their claim as owners of the goods surrendered, or as creditors privileged thereon. As to the defendant, he holds the goods, not in his own right, but as the property of the creditors of Huberson, whose syndic he is ; and he can be sued for them only in the court which appointed him. It would be otherwise were he sued in damages for injury done to plaintiff in unlawfully taking possession of this property and selling it. Such an action could be brought against him in his private capacity before any court of competent jurisdiction, and he could not seek shelter under the pretence that he was a syndic. The decisions in 2 La. 200, 350, to which we have been referred, go no farther. It was there held that although the Marshal of the United States be not amenable to the State courts, in his official capacity, yet that if, in that capacity, he wrongs a citizen of the State, he will be individually answerable in damages in our courts. In this case, the object is not to render the defendant personally responsible for an act committed by him under color of his office, but to wrest from him and take out of his hands property which he holds as syndic, and on which there is evidently a conflict between the plaintiffs who have made advances on it, and other creditors who claim à privilege as vendors. The question whether the petitioners had such a qualified property in the goods in question as to prevent the insolvent from surrendering them to his creditors, must be tried contradictorily with the latter, and in the court where the insolvent proceedings are pending. Code of Pract. art. 165.

*Judgment affirmed.*